|  |  |
|---|---|
| ALEXANDER DEVOID, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES <br> Defendant. | Case No. 1:25-CV-423-MOC-WCM |

**PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS OR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT**

In its motion for judgment on the pleadings or summary judgment, Defendant United States Immigration and Citizenship Services (USCIS) avers that there is no longer a case or controversy in the instant matter under Rule 12(c). Yet, it immediately contradicts itself by introducing evidence outside of the four corners of the pleadings themselves. For this reason alone, its motion for judgment on the pleadings should be denied. Moreover, as evidenced by the government's acknowledgment that the asserted exemptions in the instant matter remain at issue, its motion for judgment on the pleadings cannot stand on its own two feet. Similarly, its motion for summary judgment defending its Exemption 6 and Exemption 7 applications does not meet the threshold requirements of the FOIA statute and must also be denied. As discussed herein, Plaintiff also establishes his right to summary judgment against the agency.

1

## BACKGROUND

As Defendant acknowledges, Plaintiff filed his FOIA request in February of 2021. *See,* ECF No. 17; ECF No. 17-1, Panter Decl. at ¶ 8. That request sought information about USCIS's HAVEN system that the agency utilized as a central repository for compiling and processing visa applications for victims of trafficking and certain crimes; a system for which there was little public information available. *See* ECF No. 1 ¶¶ 1-8. While the agency's declaration now contends that the HAVEN system was decommissioned in 2015, as noted in the Complaint (¶ 1, fn. 1), a March 2016 report from the Office of Inspector General explicitly states that "USCIS uses two databases: (1) the Humanitarian Adjudication for Victims Enterprise Nationwide (HAVEN) system to maintain information on visas granted to victims of human trafficking (U visas and T visas) . . . ."[1]

At some indeterminate point between Plaintiff's 2021 request and 2025, the agency had located and purportedly produced records before abruptly pivoting and withholding all of the records pursuant to FOIA's exemptions. ECF No.s 17; 17-1 ¶ 12-13.[2] After appealing the agency's determination and <u>over four and a half years</u> after filing his initial request, Plaintiff filed the instant action. *See* Pl. Compl., ECF No. 1. *See also* ECF No. 17 at 4. In a stark change of position, USCIS not only

---

[1] Available at https://www.oig.dhs.gov/sites/default/files/assets/TM/2016/OIGtm-JR-031516.pdf.

[2] The agency's declaration fails to note the dates that the searches were tasked, both as to its initial search and decision to re-evaluate its position and produce records. *See* ECF No. 17-1 ¶¶ 10-11.

2

produced over 400 records (ECF No. 17-1 ¶ 15), but even tacitly acknowledged that "Although the agency initially denied Plaintiff's FOIA request, it later conducted a second assessment of the materials and conducted additional research into the use of the HAVEN database. USCIS determined that the B5 and B7E exemptions largely did not apply anymore because the system had been decommissioned." *See* ECF No. 17-1 ¶ 14.

USCIS expends a great deal of words lamenting the number of FOIA requests it receives on a yearly basis, citing six-digit numbers for Fiscal Year 2024. *See* ECF No. 17 at 2. The agency complains of its current workload and inability to comply with the FOIA statute and cites recent fiscal year numbers to support this position. Even granting it the benefit of the doubt, FY 2024's data does not justify the agency's failure to meet its statutory obligations in 2021 and FY 2024 as to Plaintiff's request. As such, the agency garners little sympathy as to its workload plight when the wounds it claims are self-inflicted. The agency had not weeks or months, but years to conduct an adequate search, identify withholdings, and segregate and produce all relevant records. It only partially met these statutory obligations after Plaintiff filed the instant suit, finally producing responsive records in March of 2026. *See* ECF No. 17 at 5. After the litigation and just before the instant motions were filed, it dropped an additional withholding and produced another record. *See* ECF No. 17 at 7.[3]

---

[3] Notably, Panter's declaration and *Vaughn* index contradict this statement, holding fast to the agency's redaction of this additional page. *See* ECF No. 17-1 at 7 ¶ 21, 13.

3

**ARGUMENT**

**I.      USCIS's burden of proof under FOIA.**

In every FOIA case, the agency bears the burden to justify nondisclosure. 5 U.S.C. § 552(a)(4)(B). *See, e.g.*, *U.S. DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989). The government "bears the burden of showing that there is no genuine issue of material fact, even when the underlying facts are viewed in the light most favorable to the requester." *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1350 (D.C. Cir. 1983). The agency must sustain its burden by submitting detailed affidavits or declarations that identify the records at issue and show why they fall under the claimed exemptions. *See Summers v. DOJ*, 140 F.3d 1077, 1080 (D.C. Cir. 1998); *Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973).

In a FOIA case, "[w]hen an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption, summary judgment in favor of the FOIA plaintiff is appropriate." *Petrol. Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992). Courts review agency FOIA decisions *de novo* and may examine the contents of disputed records in camera to determine whether the agencies should disclose them. 5 U.S.C. § 552(a)(4)(B).

FOIA arose out of concerns over the "mushrooming growth of Government secrecy." H.R. Rep. No. 89-1497, at 2 (1966). The Supreme Court has recognized that FOIA represents the general philosophy of full agency disclosure unless the information is exempt under delineated statutory language. *See U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 494 (1994) ("[D]isclosure, not secrecy, is the dominant objective of FOIA.") (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). The

4

statute serves as a means for citizens to know "what their government is up to." *Reps. Comm.*, 489 U.S. at 773. "This phrase should not be dismissed as a convenient formalism. It defines a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-72 (2004).

**II.      This Court should deny USCIS's motion for judgment on the pleadings as its own briefing, as well as the current withholdings, fail Rule 12(c)'s threshold requirements as a matter of law.**

**A.  Rule 12's requirements.**

As Defendant notes, Rule 12's standard authorizes a district court to enter judgment on the pleadings in favor of a party where after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, *Edwards*, in the sentence prior to Defendant's citation, explicitly states that "The purpose of a [Rule 12] motion is to test the sufficiency of a complaint; 'importantly, a [Rule 12] motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (citation omitted).

It is well-established that this Court cannot "consider matters outside the pleadings or resolve factual disputes when ruling on" a Rule 12 motion. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007) (citing *Edwards*). Rule 12(d) also reflects this reality—when a party presents matters outside of the pleadings under Rule 12(c), "the motion must be treated as one for summary

5

judgment under Rule 56. By its own admission, Defendant's declaration and the remaining issues regarding the agency's withholding of records under exemptions (b)(6) and (b)(7)(E) present factual issues outside of the pleadings and therefore destroy its position on the propriety of judgment on the pleadings. *See Bosiger*, 510 F.3d at 450.

### B. Plaintiff still has standing, and Defendant's own statements and evidence negate its eligibility for judgment as a matter of law.

As elucidated through the federal rules and case law, Defendant's attempt to side-step the basic requirements of Rule 12(c) is wholly negated by the mere fact that it needed to rely on evidence outside of the pleadings to state its case. To defend its Rule 12 position, it points to evidence wholly outside the pleadings, including its eventual production of records after the filing of the complaint (430 pages); relies on Mr. Panter's declaration to justify its withholdings under FOIA; and its provision of a blanket *Vaughn* index identifying its reasons for each of the agency's asserted redactions. *See id at* 11. Because Rule 12 motions cannot "consider matters outside pleadings or resolve factual disputes when ruling on" said motion, Defendant's 12(c) motion must be denied. *See Bosiger*, 510 F.3d at 450. Defendant cites no authority whatsoever for the proposition that mere production of records is sufficient to moot a plaintiff's legal remedies where the agency continues to improperly withhold records under an exemption. Indeed, it spends a substantial portion of its briefing and introduces both a declaration and *Vaughn* index defending its use of Exemptions 6 and 7. *See* ECF No. 17, 17-1.

The government also expends a great deal of words attempting to establish that Plaintiff no longer has standing solely because the agency has reviewed and produced responsive records and therefore, there is no longer a case or controversy at issue. *See* ECF No. 17 at 10-12. However, upon review of the plain text of the statute and the complaint, particularly in the light most favorable to Plaintiff, this Court still has jurisdiction to grant the Plaintiff relief. The FOIA statute grants the Court jurisdiction to conduct de novo review and "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *See* 5 U.S.C. § 552(4)(B).

The plain text of the statute gives this Court more than the ability to order production of records unlawfully delayed. Section (4)(B) also requires the Court to review the agency's withholdings under any of the enumerated exemptions and requires the agency to "sustain its action." *See id.*; *see also Ethyl Corp. v. USEPA*, 25 F.3d 1241, 1245 (4th Cir. 1994) ("Moreover, Congress explicitly provided that the agency called upon to provide documents bears the burden of demonstrating that any document withheld falls within a stated exemption. *See* 5 U.S.C. § 552(a)(4)(B) ('the burden is on the Agency to sustain its action [of withholding a record under a stated exemption].'"). FOIA's provisions about exemptions would be rendered a nullity if an agency were able to side-step defending its exemptions merely by producing some records it had previously withheld. Defendant does not cite a single authority to the contrary.

Plaintiff's pleading was also not limited to enjoining USCIS from its failure to produce records at all, which the agency well recognizes in its own motion. *See* ECF No. 17 at 4-5 ("Second, Devoid alleges that USCIS has unlawfully withheld the requested records and failed to 'take reasonable steps necessary to segregate and release nonexempt information.'"). He specifically sought relief from the Court to enjoin the agency from improperly withholding records, which, as the Fourth Circuit has long held, includes records withheld under any of the nine enumerated exemptions in the FOIA statute. *See e.g.* ECF No. 1 ¶¶ 38-42; ECF No. 1 at 11 ¶¶ b, c, f-g; *Ethyl Corp.* 25 F.3d at 1245. Because the agency has claimed exemptions and provided both a declaration and a *Vaughn* index, it has necessarily acknowledged there is more to be done in this case. *See* ECF No. 17 at 10-12. Defendant's improper withholding of segregable records remains a live issue in this case, one that the agency attempts to defend via its declaration and *Vaughn* index, and therefore cannot get out of the litigation via Rule 12(c). For the same reasons, Plaintiff clearly has standing under Article III as the agency's application of exemptions is a clear injury in fact that is concrete and particularized; is directly traceable to the Defendant's conduct; and is readily redressed by a favorable decision.

Plaintiff unequivocally has standing under FOIA and Article III. Defendant's vacuous and unnecessary motion for judgment on the pleadings results in equally unnecessary time spent by both Plaintiff and the Court reviewing the motion. This Court should deny USCIS's motion for judgment on the pleadings.

//

//

### III. This Court should deny USCIS's motion for summary judgment.

  a. Exemption 6

After this litigation commenced, USCIS raised Exemption 6 for the first time, having only asserted Exemptions 5[4] and 7 in its denial of Plaintiff's initial request. *See* ECF No. 17 at 4; 17-1, Panter Decl. at ¶¶ 13–14. Since this action commenced, the agency made an abrupt pivot, dropping its claim to Exemption 5 withholdings altogether. USCIS is not entitled to summary judgment on any of its Exemption 6 withholdings. Exemption 6 allows the agency to redact certain "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 "does not categorically exempt individuals' identities." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 153 (D.C.Cir. 2006). "The scope of a privacy interest under Exemption 6 will always be dependent on the context in which it has been asserted." *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 581 (D.C.Cir.1996).

Even if the privacy interest is a substantial one, the court must balance the individual's right of privacy against the public interest in disclosure. *Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C.Cir. 2005) (citing *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372–73 (1976)). Importantly, "The focus of the public interest analysis is the citizens' right to know 'what their government is up to.'" *Id.* (quoting *U.S.*

---

[4] Exemption 5, commonly called the "deliberative process exemption" protects certain inter-agency or intra-agency memorandums or letters that would not be available by law to a party.

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). Neither the identity of the requesting party nor the purpose for which the party intends to use a document is relevant to the public interest, but the availability of the information through other sources is. *Id.* The government ultimately bears the burden of showing that a *substantial* invasion of privacy will occur if the documents are released, which requires a reasonable degree of specificity of detail rather than merely conclusory statements. *See Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015). To carry its burden, the agency must "adequately describe <u>each</u> [redaction] from a released document, and must state the exemption claimed for <u>each</u> . . . [redaction] and explain why the exemption is relevant." *Id.* at 1148 (internal quotation marks and citations omitted) (emphasis added). USCIS fails the baseline requirements of this standard several times over.

USCIS applied the very categorical methodology the D.C. Circuit rejected in *Prison Legal News*. 787 F.3d 1142 (D.C. Cir. 2015). In that case, Defendant sought, and the district court accepted, this "categorical methodology" for supporting its Exemption 6 redactions that "lump[ed] the privacy interests" of all individuals "whose information is redacted into categories *based on the type of document in which the individual's information appears.*" *Id.* at 1150 (internal citations omitted) (emphasis added). The agency treated both the "wide range of claims covering various degrees of privacy interests," and the varying public interest in disclosure into a document-based, categorical justification. *Id.* at 1150. The D.C. Circuit

reversed, holding "the redactions in this case vary greatly, and the categories are not drawn based on the individual's privacy interest or the public's interest in disclosure." *Id.* at 1152. Here, as in *Prison Legal News*, USCIS's *Vaughn* index attempts to sustain all privacy-based redactions through a categorical, document-based organizational methodology. *See* ECF No. 17-1 at 13 (flatly stating its justification for redacting over dozens of pages as simply "Staff level employee names, emails, and phone numbers were withheld under FOIA exemption."). The same factual differences between all the uniquely identifiable staff information doom USCIS's approach.

Nor does USCIS appropriately describe how its application of Exemption 6 outweighs the public interest, and in a cursory fashion its declaration states there is no public interest in this information as it "does not shed light on how the agency is performing its duties." *See* ECF No. 17-1 ¶ 17. It further buttresses its conclusion by pointing to the *Vaughn* index, stating that its application of Exemption 6 "is described in greater detail." *Id.* But as discussed above, the *Vaughn* index contains a single sentence justifying *all* Exemption 6 withholdings and lacks any meaningful detail. USCIS's declaration does little beyond recite the statute and stack one legal conclusion upon another, which does not meet its burden under FOIA. *See Campbell v U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C.Cir. 1999)

("[A]n affidavit that contains merely a 'categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate.'"). As the court reiterated in *Campbell*, "The

affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *See id.* (quoting *Hayden v. National Sec. Agency* 608 F.2d 1381, 1387 (D.C.Cir. 1979).

Examining some of the agency's applications of Exemption 6 illustrates the cursory and non-specific approach that fails to live up to FOIA's requirements. For example, the agency redacted the name of a business owner stakeholder despite the utter lack of privacy interests protected for this class of individual under the Exemption 6 "the right of privacy envisioned in the Act is personal and cannot be claimed by a corporation or association"). *See* Exhibit A, FOIA Production Samples at 2; *Washington Research Project, Inc. v. HEW*, 366 F.Supp. 929, 937-38 (D.D.C. 1973) (discussing the applicability of Exemption 6). USCIS also fails to justify this particular exemption at all since a business owner is not a staff member. *See generally* 17-1. Elsewhere, USCIS redacts portions such as the titles and roles that particular individuals played in the development of the HAVEN system, information that finds no defense in the statute whatsoever. Ex. A at 3-4. USCIS redacts points of contact (POCs) in their entirety, without any explanation as to the individual's role or position in the development and makes it impossible to know whether that individual is a higher-ranking staff member, who Courts have held, does not enjoy the same level of privacy protection. *Id.* at 5; *see Cochran v. United States*, 770 2d 949, 956 fn. 9 (11th Cir. 1985); *Department of Air Force v. Rose*, 425 U.S. 352, 382 (1976) ("Exemption 6 does not protect against disclosure every incidental invasion of privacy— only such disclosures as constitute 'clearly

12

unwarranted' invasions of personal privacy"). *See, generally, Stern v. FBI*, 737 F.2d 84 (D.C.Cir. 1984).

Contrary to USCIS's cursory statements regarding the public interest, knowing who helped create the database and their respective roles in doing so is very much pertinent to the public's knowledge of "what their government is up to." *Horowitz,* 428 F.3d at 278. Under USCIS's rationale, any and all names and other information would be outside the public's interest, rendering the statutory provision a nullity. *See Rose*, 425 U.S. at 382.

USCIS's categorical, document-based *Vaughn* index fails here, as the *Vaughn* index did in *Prison Legal News* and *Campbell*, because it treats the privacy interests of government personnel the same regardless of each individual's status, position, or information, incorrectly concluding that the balancing interest in disclosure will be equivalent, regardless of facts. *See Prison Legal News*, 787 F.3d at 1150-51 (contrasting the facts of different instances of Defendant's record-set and explaining why the categorical, document-based Exemption 6 analysis fails as a result); *Campbell*, 164 F.3d at 30. This Court should deny Defendant's motion for summary judgment and grant Plaintiff's motion for summary judgment.

b. Exemption 7(E)

Plaintiff is entitled to judgment as a matter of law that USCIS's asserted withholdings of records the agency produced regarding the HAVEN system do not meet the statutory threshold for protection under Exemption 7, as they were not "compiled for law enforcement purposes," nor did the agency establish the required

13

foreseeable harm from disclosure. *See* 5 U.S.C. § 552(b)(7). "Before it may invoke [Exemption 7], the Government has the burden of proving the existence of such a compilation for such a purpose." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989); see also *Milner v. Dep't of the Navy*, 562 U.S. 562, 582 (2011) (Alito, J. concurring). Agencies must meet this initial Exemption 7 threshold "before they may withhold requested documents on the basis of any of its subparts." *Pratt v. Webster*, 673 F.2d 408, 416 (D.C. Cir. 1982).

Law enforcement agency assertions that records "compiled for law enforcement purposes" under Exemption 7 are generally entitled to deference in that assertion. *See*, e.g., *Clemente v. FBI*, 867 F.3d 111, 119 (D.C. Cir. 2017); *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32 (D.C.Cir. 1999). This "deferential standard of review is not, however, vacuous." *Id.* (quoting *Pratt*, 673 F.2d at 419). Rather, agency "declarations must establish a rational nexus between the investigation and one of the agency's law enforcement duties, as well as a connection between an individual or incident and a possible security risk or violation of federal law." *Farahi v. FBI*, 153 F.4th 1283, 1287 (D.C. Cir. 2025) (quoting *Campbel*l, 164 F.3d at 32 and *Pratt*, 673 F.2d at 420-21 (cleaned up)). When an agency's "declarations 'fail to supply facts' in sufficient detail to apply the *Pratt* rational nexus test, then a court may not grant summary judgment for the agency." Campbell, 164 F.3d at 32 (quoting *Quinon v. FBI*, 86 F.3d 1222, 1229 (D.C. Cir. 1996)).

In determining whether an agency can meet its burden that it compiled records for a law enforcement purpose, context is key. The D.C. Circuit "has long

14

emphasized that the focus is on how and under what circumstances the requested files were compiled, 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C Cir. 2002) (citing *Weisberg v. United States Dep't of Justice*, 489 F.2d 1195, 1202 (D.C. Cir. 1973) and quoting *Aspin v. Dep't of Def.*, 491 F.2d 24, 27 (D.C. Cir. 1973)). "Courts have a responsibility to ensure that an agency is not simply manufacturing an artificial risk and that the agency's proffered risk assessment is rooted in facts." *Long v. Immigration and Customs Enforcement*, 149 F.Supp.3d 39, 53 (D.D.C. 2015).

Here, USCIS's own actions undermine its position. As discussed in its briefing, USCIS withheld information on pages 268, 304-305 under Exemption 7(E), before abruptly reversing its position and disclosing the entirety of page 268. *See* ECF No. 17, 17-3. Other than vague gestures towards the Immigration and Nationality Act (INA), USCIS wholly fails to explain how these specific records are "law-enforcement records" or "law enforcement techniques or procedures" in any meaningful sense of the words. Despite Defendant's claims regarding its role in law enforcement, the words "enforcement" and "law enforcement" appear nowhere in USCIS's own documentation discussing its strategic plan. *See* USCIS, "FYs 2023-2026 Strategic Plan" (Last Accessed July 8, 2026).[5] The Department of Homeland Security has entirely separate subcomponents to enforce immigration laws—

---

[5] Available at
https://www.uscis.gov/sites/default/files/document/reports/StrategicPlanFY23.pdf).

Immigration and Customs Enforcement and Customs and Border Protection, neither of which is a party nor present issues in the instant matter.

Turning to its *Vaughn* index, Defendant states:

> This information was withheld under FOIA exemption B7E. The USCIS Directory Services platform provides a centralized Lightweight Directory Access Protocol (LDAP) directory that is directly leveraged by the USCIS end users as a primary directory authentication platform, as well as application systems that provide USCIS with capabilities extending to a single authoritative authentication and identification mechanism. The information withheld is sample coding for an authentication application in LDAP. This information if disclosed would allow an outside user to develop coding to interfere with the security of USCIS systems and thereby interfere with USCIS's ability to enforce the immigration laws of the United States. USCIS must protect the integrity of the data within its systems, and this foreseeable harm is why the information was properly withheld. All other information was segregated and released.

ECF No. 17-1 at 13.

What is a "Lightweight Directory Access Protocol"? How does a "primary directory authentication platform" or an "authoritative authentication and identification mechanism" apply to USCIS's purported responsibilities to enforce the INA? Is *all* of this code proprietary to USCIS, or is it derived from open-source code?[6] How are any of these records law enforcement records or techniques? Because it applied blanket Exemption 7 withholdings to the information on those

---

[6] "Open source software (OSS) is source code developed and maintained through open collaboration. <u>Anyone</u> can use, examine, alter and redistribute OSS as they see fit, typically at no cost." Stephanie Susnjara et. al, "What is open source software?" (Last visited July 8, 2026), available at <u>https://www.ibm.com/think/topics/open-source</u> (emphasis added).

two pages, the Court cannot meaningfully determine whether any of the information is reasonably segregable, as, once again, USCIS simply asserts that reality without stating more. USCIS leaves these questions entirely unanswered and invokes the "trust us" approach to these blanket withholdings, which, as discussed at length *supra*, Courts have repeatedly rejected.

Momentarily setting these issues aside, the agency has failed to establish what foreseeable harm would stem from disclosing the records from what they state is a purportedly defunct system. *See* ECF No. 17-1, Panter Decl. at ¶ 21. The D.C. Circuit discussed at length in its 2021 decision on foreseeable harm:

> Congress added the distinct foreseeable harm requirement to foreclose the withholding of material unless the agency can "articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld." H.R. REP. No. 391, at 9. . . . Agencies cannot rely on "mere `speculative or abstract fears,' or fear of embarrassment" to withhold information. S. REP. No. 4, at 8. Nor may the government meet its burden with "generalized assertions[.]" *Machado Amadis [v. Department of State],* 971 F.3d [364], 371 [(D.C. 2020)].
>
> In that way, the foreseeable harm requirement "impose[s] an independent and meaningful burden on agencies." *Center for Investigative Reporting v. United States Customs & Border Prot.,* 436 F. Supp. 3d 90, 106 (D.D.C. 2019) (citation omitted).

*Reps. Comm. for Freedom of the Press v. FBI,* 3 F.4th 350, 369 (D.C. Cir. 2021)

USCIS's bare-bones explanation of the foreseeable harm does not meet its burden under the statute. Panter discusses his credentials and background in government transparency and has a Master's in Public Administration, but does not aver anywhere in his declaration that he has personal, relevant knowledge of

17

information technology or information security. *See* 17-1 ¶¶ 1-3. The agency's speculative fears of "an outside user to develop coding to interfere with the security of USCIS systems" for records that do not nominally appear to be related to law enforcement fail to satisfy the burden Congress imposed through the foreseeable harm standard. *Compare* ECF No. 17-1 ¶ 21; pg. 13, *with Reps. Comm.*, 3 F.4th at 369.

Taken together, these significant gaps in USCIS's defense of its application of Exemption 7(E) are insufficient to meet its burden under FOIA. This Court "has a responsibility to ensure that an agency is not simply manufacturing an artificial risk and that the agency's proffered risk assessment is rooted in facts." *Long*, 149 F.Supp.3d at 53. The Court should deny Defendant's motion for summary judgment and grant Plaintiff's motion for summary judgment on Exemption 7(E).

## CONCLUSION

At its very core, FOIA favors disclosure. Consistent with this principle, Congress wrote the statute to impose a high burden on federal agencies to justify the choices they make when withholding records. Categorical withholdings with vague or bare-bones reasoning do not meet this burden. The agency has failed to meet the threshold requirements for judgment on the pleadings or summary judgment. It has not lived up to its responsibilities to justify its withholdings under Exemptions 6 or 7. For all of the foregoing reasons, this Court should deny Defendant's motion in its entirety and grant Plaintiff's motion for summary judgment.

18

Respectfully submitted,

Date: July 10, 2026

/s/Daniel Melo
Daniel Melo
The Melo Law Firm
NC Bar # 48654
2920 Forestville Road, Ste 100
PMB 1192
Raleigh, NC 27616
Tel: (919) 348-9213
dan@themelolawfirm.com
*Pro Bono Counsel For Plaintiff*

19

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 10, 2026, the foregoing document was filed with the Clerk of the Court via CM/ECF, which will send notice of such filing to all counsel of record who are registered CM/ECF users in this case.

By: <u>/s/ Daniel Melo</u>

# AI CERTIFICATION

Pursuant to the Standing Order of this Court entered June 18, 2024 and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 10th day of July, 2026

/s/ Daniel Melo
Counsel for Plaintiff.