**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

| | |
|---|---|
| ALEXANDER DEVOID,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES<br>Defendant. | Case No. 1:25-CV-423-MOC-WCM |

# PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

## I. This Court should grant Plaintiff's motion for summary judgment as the agency has failed to carry its burden as to Exemption 6 and there is no genuine issue of material fact.

Defendant is not entitled to summary judgment on its Exemption 6 withholdings. Exemption 6 allows the agency to redact certain "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 "does not categorically exempt individuals' identities." *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 153 (D.C. Cir. 2006). "The scope of a privacy interest under Exemption 6 will always be dependent on the context in which it has been asserted." *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 581 (D.C. Cir. 1996).

Even if the privacy interest is a substantial one, the Court must balance the individual's right of privacy against the public interest in disclosure. *Horowitz v.*

*Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005) (citing *Rose*, 425 U.S. at 372–73). "The focus of the public interest analysis is the citizens' right to know 'what their government is up to.'" *Id.* (quoting *DOJ v. Reporters Comm. for Free Press*, 489 U.S. 749, 773 (1989)). Neither the identity of the requesting party nor the purpose for which the party intends to use a document is relevant to the public interest, but the availability of the information through other sources is. *Id.*

Courts have also rejected Exemption 6 where it involves a high-ranking agency official. *See e.g.*, *Aguirre v. Securities and Exch Comm'n*, 551 F.Supp.2d 33, 53 (D.D.C. 2008) (information that "merely identifies the names of government officials who authored documents and received documents" does not generally fall within Exemption 6.); *New York Times Co. v. National Aeronautics and Space Admin.*, 920 F.2d 1002, 1009 (D.C. Cir. 1990) ("[i]t is the rare file indeed for which the Government could, in good faith, assert an interest in authorial privacy, simply because it is most unusual for a government file to yield up any meaningful information about its author."); *National Day Laborer Organizing Network v. United States Immigration & Customs Enforcement Agency,* 811 F. Supp. 2d 713, 747 (S.D.N.Y. 2011) ("it is [] inappropriate for the agencies to withhold this information—over which they have sole access'—in an attempt to gain their own advantage.").

a. <u>Roles and titles do not fall under any of the statute's exemptions.</u>

The government's first significant failing is its use of Exemption 6 by withholding roles and titles, and one it fails to provide a meaningful argument

for. The statute plainly does not allow it to redact those generic portions of the records, as Exemption 6 is aimed at "unwarranted invasion of *personal* privacy." 5 U.S.C. § 552(b)(6). A "role" or "title" falls wholly outside of Exemption 6, as those terms cannot have an individual privacy interest. *Empower Oversight* subtly recognized this basic distinction: "When making this determination, we are to apply a broad meaning to the word 'file' considering 'the term similar files, includes all files which contain information about a particular individual.'" *Empower Oversight Whistleblowers & Research v. NIH*, 122 F.4th 90, 106 (4th Cir. 2024) (emphasis added, internal citation omitted).

Roles and titles do not meet the threshold requirement of the plain language of the statute, and the agency therefore continues to unlawfully withhold them. By extension, the agency has also failed to reasonably segregate non-exempt information. *See id.* § 552(a)(8); (b)(9); (d) (repeatedly reaffirming the agency's duty to segregate non-exempt portions of records and explicitly limiting the exemptions to their expressed terms). The agency's own declaration fails to defend this choice—nowhere in its Exemption 6 declaration is there a justification for the redactions of titles and roles; indeed, these terms do not appear at all. *See* ECF No. 17-1, Panter Decl. ¶ 16-17. USCIS has completely failed to meet its Exemption 6 burden as to "titles" and "roles," and those redactions are unlawful as the terms themselves lack even a de minis privacy interest.

//

b. The agency has not met its burden under Exemption 6 for the names of high-ranking or public-facing officials.

USCIS states in its response that it withheld identities of HAVEN Program or Project Managers, major participants, signatories, and other officials, and yet applies one explanation across all of those groups. *See* ECF No. 21 at 7-8. However, Panter's declaration only defends the agency's redactions that "consist[] of the e-mail addresses and phone numbers for agency personnel." It does not address names at all. This alone is fatal to the agency's burden under Exemption 6 with respect to staff names.

Independent of this failing, Exemption 6's protections also do not readily apply to high-level officials or to authors of particular records. *See e.g.*, *Aguirre*, 551 F.Supp.2d at 53; *New York Times Co.*, 920 F.2d at 1009; *Solers, Inc. v. IRS*, 827 F.3d 323 (4th Cir. 2016) (citing *Judicial Watch, Inc. v. United States*, 84 Fed. Appx. 335, 339 (4th Cir. 2004) for the proposition that lower-level agency employees present a different public interest). A portion of USCIS's own FOIA guidance on exemption analyses recognizes this fact to some degree—it states that public-facing officials' names or signatures are releasable and that redactions only apply to private identifiable information "such as phone numbers, emails, addresses, user IDs, etc." *See* USCIS Ch. 4 "Processing Responsive Records §§ 5.7 and 6.3 (published on USCIS Reading Room July 13, 2026).[1] In its declaration and *Vaughn* index, USCIS does nothing to analyze,

---

1 https://www.uscis.gov/sites/default/files/document/foia/FOIA_Processing_Guidance_-_Exemption_Analyses.pdf.

distinguish, or segregate the information of the different officials within the records and therefore has not met its burden under Exemption 6.

Even if the Court deemed the agency's exemptions of agency officials adequate under the first prong of the Exemption 6 analysis, the public's interest in the names and roles of certain individuals is self-evident. Disclosure of these government officials who occupied particular positions[2] of responsibility and authority in the creation, approval, design, and operation of a system designed to grant benefits to an especially vulnerable population of individuals readily falls within the public's interest. It provides insight to the public about how these noncitizens' cases were managed writ large during the use of this database. This is precisely the kind of information that FOIA seeks to open to the public—it sheds light on how the agency is performing its duties. *See Dep't of Defense v. FLRA*, 510 U.S. 487, 497 (1994) ("the only relevant public interest in the FOIA balancing analysis-the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" (citing *Reports Comm.*)).

The fact that the records are a retrospective look at the agency's process is not only irrelevant,[3] as it still provides information about who was involved in

[2] The agency acknowledges in its own briefing that the names of "major participants" in the creation of HAVEN were redacted. *See* ECF No. 21 at 7-8.

[3] *See Reporters Comm. for Free Press*, 489 U.S. at 771 ("Our previous decisions establish that whether an invasion of privacy is *warranted* cannot turn on the purposes for which the request for information is made.")

creating HAVEN as a tool to manage the applications of this vulnerable population; but as the instant record shows, USCIS had never acknowledged in a public forum that the system had been decommissioned at all before this litigation. *See* ECF No. 17-1 ¶¶ 10-15 (noting that the sub-component within USCIS tasked with the search first learned of HAVEN's decommissioned status after receipt of Plaintiff's FOIA request as well as the agency's eventual withdrawal of its denial of Plaintiff's request as the exemptions "largely did not apply anymore because the system had been decommissioned."). Additionally, as is apparent from the record before the Court, to the extent that the agency has pivoted to a different database for processing and adjudicating visas for victims of crime and human trafficking, knowing who was involved with HAVEN, simply as a point of contrast, informs the public's understanding of the current or future system and its design.

Because 1) roles and titles do not enjoy protection under Exemption 6; 2) the agency has failed to defend its redactions of personnel's names; 3) the agency failed to adequately segregate names from roles and titles; 4) the public interest in the names involved in the creation of the HAVEN system are in the public interest over the privacy interests at stake; and 5) the agency has applied categorical redactions for Exemption 6 without independent analysis as to the rank of high-level agency staff and/or public-facing officials, the agency has not met its burden under FOIA, and this Court should enter summary judgment for Plaintiff.

## II. This Court should grant Plaintiff's motion for summary judgment as the agency has failed to carry its burden as to Exemption 7(E) and there is no genuine issue of material fact.

Exemption 7(E) requires a threshold issue to be met—the records must be *compiled* for law enforcement purposes. *See* 5 U.S.C. § 552(b)(7)(E). In other words, the purpose of the aggregation of the records (not USCIS's purported enforcement of immigration law) has to be aimed at a law enforcement purpose. These responsive records are not records of the adjudications themselves, nor are they pertinent to *how* USCIS used the system to decide cases, but rather the framework of the system itself. This difference becomes clear by looking at the production of records—one of the sections titled "HAVEN ADJUDICATION," a completely unredacted portion—does not detail the method by which USCIS officers decide cases but lays out how the officer can locate and input information into HAVEN. *See, e.g.*, ECF No. 21-1 at 381-387.

This distinction, as it pertains to these records, becomes clearer still when reviewing the record production elsewhere. The Executive Summary describes how HAVEN records "case data and adjudicative actions, prints notices, tracks approved cases, assigns fraud-related nicknames, and records comments, by case" as it relates to T and U visas. *See* 17-1 at 310. The agency does nothing to explain the overlap between the records and their being "compiled for law enforcement purposes." USCIS's citation to the Fourth Circuit's decision in *Grey* draws out this distinction even further—the Plaintiff in *Grey* specifically sought <u>current</u> records about how the agency investigates marriage fraud. *See Grey v. Alfonso-Royals*, 140 F.4th 173, 178

(4th Cir. 2025) ("Investigation is an important component of enforcing the law and thus constitutes a law enforcement purpose.").

The agency does nothing in its declaration or *Vaughn* index to suggest that the records here involving HAVEN carry an investigative purpose and instead, in a single paragraph, relies on a vague cybersecurity threat[4] twice removed from Exemption 7(E), albeit in a term-laden way. *See* 17-1 at 6-7, 13. A sweeping, undetailed cyber-security risk does not meet Exemption 7(E)'s burden for withholding records. *See Long v. Immigr. & Customs Enf't*, 149 F.Supp.3dd 39, 53 (D.D.C. 2015) ("Courts have a responsibility to ensure that an agency is not simply manufacturing an artificial risk and that the agency's proffered risk assessment is rooted in facts. Based on the present record, the court cannot find that Defendants have carried their burden of showing that disclosure . . . increases the risk of a cyber-attack of the kind Defendants' posit."); *see also Am. Immigr. Council v. U.S. Immigr. and Customs Enf't*, 464 F.Supp.3d 228, 243 (D.D.C. 2020) (denying agency's motion for summary judgment, citing *Long*).

The Fourth Circuit's decision in *Zaid* does not come to the agency's aid—*Zaid* dealt with Exemption 7(A), which looks to records whose release "could reasonably

---

[4] As noted in Plaintiff's cross-motion, Defendant has yet to explain what these miscellaneous terms mean, let alone how they meaningfully overlap with Exemption 7(E) such that the Court could connect the two nor allow it to assess whether any of the information is reasonably segregable. *See* ECF No. 19-1 at16-17. Should the Court still be inclined to accept USCIS's explanation, it retains the ability under the statute "examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions." 5 U.S.C. § 552(a)(4)(B). Even so, "the burden is on the agency to sustain its action." *Id.*

be expected to interfere with enforcement proceedings." *See Zaid v. Dept. of Justice*, 96 F.4th 697, 700 (4th Cir. 2024) (discussing how the responsive records could interfere with ongoing proceedings in a criminal case). USCIS does not assert that the responsive HAVEN records fall under Exemption 7(A) or that they relate in any way to a law enforcement proceeding.

Finally, USCIS's attempt to wrap the responsive records in its claimed newfound enforcement capabilities also fails. The agency refers to the 2025 regulation that grants it additional authority to conduct law enforcement activities and, as such, clears up any doubt that the agency is a law enforcement agency. *See* ECF 21 at 13-14. However, this regulation undermines the agency's own argument—there would be no need for this regulation at all if the agency had already possessed law enforcement capabilities a decade prior during HAVEN's creation. As discussed at the beginning of this section, Exemption 7(E) applies to records *compiled* for law enforcement purposes. *See* 5 U.S.C. § 552(b)(7)(E). The agency provides no citation in the statute or the case law that indicates that its current apparent status as a "law enforcement" component of DHS applies to records generated over a decade ago.

The agency also makes a false equivalence between "administer" and "enforce." *See* ECF No. 21 at 13 ("USCIS 'enforces' immigration laws when the agency administers visa, asylum, refugee, and naturalization applications or petitions."). Congress itself made a clear distinction between the terms within the INA, stating that the Secretary "shall be charged with **administration and enforcement**,"

which the agency attempts to consolidate into a single term. *See* 8 U.S.C. § 1103(a)(1) (emphasis added). USCIS's interpretation violates "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks and citation omitted). "Administer" and "enforce" are not equal in this context. USCIS has not met its burden as to Exemption 7(E), and this Court should deny Defendant's motion for summary judgment and grant Plaintiff's cross-motion.

## CONCLUSION

USCIS has not met its statutory burden under Exemption 6. By failing to defend its use of redactions as to names, applying categorical redactions to generic titles and roles, failing to distinguish between low-level staff and high-ranking officials, and failing to otherwise segregate materials that are not exempt, it is unlawfully withholding records. Similarly, it has not met its burden under Exemption 7(E). It fails to establish the connection between HAVEN's creation and the redacted records being compiled for law enforcement purposes other than vague and seemingly manufactured artificial risk to its current systems. These explanations do not meet the agency's burden under Exemption 7(E). This Court should deny Defendant's motion for summary judgment and grant Plaintiff's cross-motion for summary judgment and order the agency to release all non-exempt, segregable information.

Dated: September 11, 2026

Respectfully submitted,

By: /s/ Daniel Melo
Daniel Melo
The Melo Law Firm
NC Bar # 48654
2920 Forestville Road, Ste 100
PMB 1192
Raleigh, NC 27616
Tel: (919) 348-9213
dan@themelolawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2026, the foregoing document was filed with the Clerk of the Court via CM/ECF, which will send notice of such filing to all counsel of record who are registered CM/ECF users in this case.

By: /s/ Daniel Melo